KUSKIN, J.T.C.
For tax year 1997, the Town of Kearny placed a local property tax assessment of $900,100 on a building owned by plaintiff, Consolidated Rail Corporation (“Conrail”). Conrail contends that the building should have been assessed under the provisions of the Railroad Tax Law of 1948, N.J.S.A. 54:29A-1 to -77 (the “Railroad Tax Law”), and was not subject to assessment by Kearny. Conrail does not contest the amount of the assessment imposed by Kearny. As of January 1, 1996, the applicable valuation date under the Railroad Tax Law, only the skeletal structure of the building had been constructed. As of October 1, 1996, the applicable valuation date for the Kearny assessment, the building was complete.
Each of the parties has moved for summary judgment. Based on the parties’ respective statements of material facts submitted pursuant to R. 4:46-2(a) and (b), the following facts are either stipulated or not subject to any genuine dispute.
On or about September 7, 1994, representatives of Conrail appeared before the Planning Board of Keamy seeking preliminary and final site plan approval and variances for construction of the building which is the subject of these appeals. As reflected in the Board’s minutes of the meeting, Conrail proposed to remove existing office trailers and replace them with the building which would be used “in conjunction with the truck traffic control *294 system.” Michael McClellan testified at the meeting on behalf of Conrail as follows: the truck traffic related to “the movement of tractor trailers and containers on flat cars (trains) shipped to terminals inland and then shipped out; the fastest growth of transportation this year; the railroad provides lower and lower shipping cost, reducing highway truck miles and pollution; the Kearny terminal is one of six in the northeast, handling approximately 240,000 units per year.” At the conclusion of the meeting, the Board unanimously approved the application, subject to certain conditions not relevant to these appeals.
As of January 1, 1996, the building described in the site plan approval application was under ■ construction, and the building skeleton had been erected. Completion of construction occurred on or about August 14, 1996. The building replaced twenty or •thirty trailers (all of which had been assessed as railroad property), and was to be used: 1) as an office for Conrail employees and contract persons responsible for overseeing movement of tractor trailers and containers on flat cars at Conrail’s Kearny terminal; 2) for preparation of paperwork relating to shipments arriving and departing from the terminal, and 8) as a sign-up point for railroad employees and contract persons working in and around the terminal. In November 1996, a representative of the New Jersey Division of Taxation inspected the building and determined that it was then used for railroad purposes. For tax year 1998, the building was assessed and taxed under the Railroad Tax Law.
On or about March 1,1996, Conrail filed with the Director of the Division of Taxation (“Director”) the information return describing its property as required by N.J.S.A. 54:29A-44(a) and by N.J.A.C. 18:28-8.1(a)(l). The return contained no description of, or reference to, the construction of the subject building. Conrail did not file progress or completion reports with respect to the building as required by N.J.A.C. 18:23 — 8.1(c). On or about November 10, 1996, the Director, pursuant to N.J.S.A. 54:29A-17, delivered to Conrail a detailed statement of the properties which were to be assessed as railroad property for tax year 1997. Although the *295 statement included the land on which the subject building was constructed, the statement did not include the building.
Conrail first communicated with the Director concerning the Director’s failure to assess the subject building as railroad property by letter dated November 20, 1996. This letter was accompanied by site and architectural plans for the building, and confirmed that a temporary certificate of occupancy “was just granted.” On December 5, 1996, Conrail wrote to a Deputy Attorney General requesting that the building be included as railroad property for tax year 1997. This letter stated that the “skeletal structui-e was complete as of January 1, 1996,” and enclosed photographs taken on February 2 and July 28, 1996. The Director refused to add the building to the property of Conrail assessed under the Railroad Tax Law for 1997.
Based on information available to the Kearny tax assessor that, as of the October 1, 1996 assessment date for the 1997 tax year, the subject building was not subject to taxation as railroad property, the assessor imposed a 1997 local property tax assessment of $900,100. On March 8, 1997, Conrail filed a complaint in the Tax Court appealing the Director’s refusal to assess the subject building as railroad property for the tax year 1997. On October 6, 1997, Conrail filed a complaint in the Tax Court appealing the Hudson County Board of Taxation’s affirmance of Kearny’s 1997 assessment.
Both the Director and Kearny contend that summary judgment should be granted dismissing the appeals filed by Conrail primarily for two reasons:
1. Conrail’s failure to include the partially completed building in the information return which Conrail was obligated to file (and did file) as of March 1, 1996 pursuant to N.J.S.A. 54:29A-44(a), precluded Conrail from requiring the Director to assess the building under the Railroad Tax Law even if the building’s use or anticipated use as of January 1, 1996 (the valuation date for railroad property set forth in N.J.S.A. 54:29A-17) was for railroad purposes; and
*296 2. the partially completed building did not qualify for taxation under the Railroad Tax Law because, as of January 1, 1996, the property was not “used for railroad purposes” under N.J.S.A. 54:29A-7 nor was such use anticipated as of that date.
Conrail contends that failure to include the partially completed building in its March 1,1996 information return did not preclude it from correcting the return prior to December 15,1996 pursuant to N.J.S.A. 54-.29A-18.1. Conrail further contends that the building qualified for assessment and taxation under the Railroad Tax Law for tax year 1997 because, as confirmed by the Director’s assessing the building as railroad property for tax year 1998, the clearly anticipated use of the building as of January 1, 1996 was for railroad purposes.
The Railroad Tax Law is the successor to legislation originally enacted in 1884. The purpose of the Law is to “commit the assessment of property used for railroad purposes to a state agency to avoid application of varying methods and standards of valuation by municipalities in which the property is located.” N.Y. Susquehanna & W. Ry. Corp. v. Hardyston Tp., 8 N.J.Tax 626, 632 (Tax 1987) (citation omitted). Under the Railroad Tax Law, and its predecessors, railroad property is divided into' three classes. Class I consists of the main stem of the railroad, Class II consists of other real estate used for railroad purposes, and Class III consists of facilities used in passenger service. N.J.S.A. 54:29A-17. The partially completed building which is the subject of these appeals constitutes Class II railroad property if assessed under the Railroad Tax Law. Class II property is assessed by the Director on or before November 1 for each tax year at its true value as of the preceding January 1. Ibid. For tax year 1997, therefore, the valuation date was January 1, 1996. Class I and Class III railroad property is not subject to taxation based on the fan* market value of the property.
The Railroad Tax Law of 1948 constitutes a new method of taxing property located in New Jersey and used in the furnishing of transportation service in this State. The law provides a combination property and franchise tax computed in a given year on the basis of the net operating income of a railroad system for the preceding calendar year. The justification for the tax is the presence in the State of Class I *297 and Class III property of great value, which is essential to system operations. As a measure of the amount which must be paid in tax upon such properly used on system operation, the Legislature has üxed a very low direct property tax to which has been added an additional amount to be determined by the results of such system operations, the total being far below the ionner straight property lax.
[Central R.R. Co. of N.J. v. Director, Div. of Tax Appeals, 8 N.J. 15, 21, 83 A.2d 527 (1951), appeal dismissed, 342 U.S. 936, 72 S.Ct. 557, 96 L.Ed. 697, reh’g denied, 343 U.S. 921, 72 S.Ct. 675, 96 L.Ed. 1334 (1952).]
The Railroad Tax Law and its predecessors were intended to benefit the railroads by providing a uniform system of valuation and assessment. The Law also provided financial relief to the railroads.
It must be remembered that the new method provided by the Legislature for taxing railroad property used in transportation service in this State was designed to give some measure of relief to the railroad companies in poor earning years and it gives the state an additional return in good earning years.
[Id. at 20, 83 A.2d 527 (citation omitted).]
Valuation and assessment of railroad property under the Railroad Tax Law provides railroads with the equivalent of an exemption from local property taxation. As with exemptions generally, the railroad has the burden of establishing qualification for the exemption. N.Y. Susquehanna & W. Ry. Corp. v. Hardyston Tp., supra, 8 N.J.Tax at 685. Filing an information return pursuant to N.J.S.A. 54:29A-44(a) is an integral and essential prerequisite to qualification for the exemption. The statute provides:
On or before March first in each year, every taxpayer shall return to the [Director][1] statements or schedules showing the character and value of all its property, as it existed on the first day of January preceding, its capitalization and its indebtedness.
[N.J.S.A. 54:29A-44(a).]
Under N.J.A.C. 18:23-8,l(b), the railroad must report “only changes in the ownership, character or value” of its property on an annual basis because the Director maintains an inventory of railroad property.
*298 The statutory structure for the determination of the assessment on Class II railroad property indicates the importance of the March 1 information return. On or before November 1 in each year, the Director must classify all real property used for railroad purposes into Class I, Class II or Class III, and, “determine the true value, as of the preceding January 1, of all Class II property used for railroad purposes in this State.” N.J.S.A. 54:29A-17. By November 10 in each year, the Director must deliver a “detailed statement” of the classification and valuation of Class II property to each taxpayer. Ibid. The taxpayer has the right to confer with the Director concerning the classifications and valuations so that, by December 15 of each year, the Director may formally promulgate the assessment for each property for the following tax year.
Any taxpayer may, prior to December 1 in each year, inspect the [Director’s] classifications and valuations and confer informally with the [Director] as to the correctness of such classifications and valuations so that any errors may be corrected prior to the [Director’s] assessment of Class II property.
Following any such informal conference with the taxpayer and not later than December 15 in each year the [Director] shall deliver to the taxpayer a detailed statement of the taxpayer’s Class II property together with the assessment of such property for the following tax year at the rate hereinabove established.
[N.J.S.A. 54:29A-18.1.]
As described above, Conrail failed to include the subject partially-completed building in its March 1, 1996 information return. As a result, the Director had no opportunity to inspect, classify and value the property during the period March 1 through November 1, 1996. Conrail contends that, by November 20,1996, it brought to the Director’s attention the omission of the partially completed building, and that a correction of Director’s detailed statement, so as to include the building, is permitted under N.J.S.A 54:29A-18.1. Conrail further asserts that, under N.J.S.A. 54:29A-25(b), the Director has the right to impose an omitted assessment on property which a taxpayer failed to include in a March 1 information return, thus indicating that property is subject to inclusion as railroad property even after the November 1 detailed statement has been prepared. I reject these contentions for the following reasons.
*299 The significance of the submission of the March 1 information return under the Railroad Tax Law can be analogized to the significance of the submission of an application for farmland assessment under the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 to -23.23. Qualification for farmland assessment does not result in total exemption from local property taxation. Qualified farmland is assessed based on valuation ranges established by the State Farmland Evaluation Advisory Committee. N.J.S.A. 54:4-23.20. Nevertheless, farmland assessment qualification constitutes the equivalent of exemption from taxation, Wishnick v. Upper Freehold Tp., 15 N.J.Tax 597 (Tax 1996), similar to the exemption resulting from taxation under the Railroad Tax Law. An application for farmland assessment must be filed with the tax assessor by August 1 of each year, N.J.S.A. 54:4-23.13, and filing an annual application is one of the specific statutory requirements for farmland assessment qualification. N.J.S.A. 54:4-23.6(e). The application must include a detailed description of the property for which qualification is sought, a detailed description of the agricultural or horticultural use of the property with a breakdown by acreage, as well as information concerning the income generated by the property. N.J.S.A. 54:4-23.14; N.J.A.C. 18:15-2.2; Local Property and Public Utility Branch, Division of Taxation — Department of the Treasury, State of New Jersey, Handbook for New Jersey Assessors, V-Ex. 8 (1989). Between the date of submission of the farmland assessment application and November 1 of each year, the assessor must make a determination as to whether farmland assessment will be allowed for the following year. If such assessment is disallowed, the assessor must notify the property owner on or before November 1 setting forth the reasons for disallowance. N.J.S.A. 54:4-23.13b.
The purpose of the farmland assessment application has been described as follows:
This legislative requirement, for the filing of the farmland assessment application is to notice the assessor as to the exact agricultural or horticultural use the owner is claiming and the facts relied upon in support thereof so the assessor may check it out and make an informed determination whether the application sets forth a claim recognized by the act and whether the facts found by him support the claim. The fact that the assessor is direct ed to notify the owner of a denial by November 1 of *300 the pretax year clearly manifests that the assessor must make his examination and determination and, if denied, the reasons therefore by November 1. When the assessor makes his physical inspection, naturally and logically, he is guided by the application as to what facts he should investigate.
[Interstate 78 Office Park, Ltd. v. Tewksbury Tp. 11 N.J.Tax 172, 181 (Tax 1990).]
This quotation addressed a situation where a taxpayer filed a farmland assessment application claiming one use as the qualifying use, and then, at trial, asserted, as the qualifying use, a different use which had not been disclosed on the application. The court concluded that the assessor was entitled to rely on the contents of the farmland assessment application and that a different conclusion “would make the farmland application a sham rendering it ineffectual and meaningless; it would completely thwart the Legislature’s scheme of controlling the granting of farmland assessments as evidenced by the act’s requiring the filing of the application and its approval or disapproval in the pretax year.” Id. at 185. See also Wishnick v. Upper Freehold Tp., supra, 15 N.J.Tax 597.
Just as a municipal tax assessor is entitled to rely on the contents of a farmland assessment application in determining what investigation is necessary between the date of filing of the application and the November I deadline for notifying the taxpayer of disallowance of farmland assessment, so, too, the Director is entitled to rely on the information return submitted by a railroad in determining what investigation is required in order to classify and value each parcel of property identified by the taxpayer. If a railroad were permitted to “correct” its information return after November 1, but before December 15, of each year so as to add property, the information return would cease to serve its function. The Director would not be able to rely on the return in classifying and valuing railroad property by November 1, as required by statute. When considered in the context of the one partially-completed building which Conrail seeks to add to its 1996 information return, the problem does not seem significant for the Director. If, however, every railroad could defer until after November 1 its decision as to which property to include in its list of properties subject to taxation under the Railroad Tax Law, the *301 Director’s ability to make determinations as to classification and valuation by November 1 would be thwarted.
Inclusion of a property in a March 1 information return is, therefore, as essential to qualifying that property for the exemption from local property taxation under the Railroad Tax Law as is the inclusion in an application for farmland assessment of a property which a taxpayer seeks to qualify for assessment under the Farmland Assessment Act. Failure to file a farmland assessment application for a parcel of property by August 1 of any year precludes qualification.
Since the statutes requiring filing of farmland assessment application by August 1 of the pretax year are not ambiguous and they reflect a clear intention that the filing date contained therein be complied with, the legislative purposes would not be fulfilled by permitting the tolling of the time limitations contained therein. Strict compliance is consonant with the legislative scheme. Therefore, the word “shall” as used within N.J.S.A 54:4-23.13 is construed to mean “must.” The filing deadline contained therein of August 1 of the pretax year is mandatory and it may not be tolled.
[Galloway Tp. v. Petkevis, 2 N.J.Tax 85, 93 (Tax 1980)]
N.J.S.A. 54:4-23.13 provides that a farmland assessment application “shall be submitted by the owner to the assessor of the taxing district in which such land is situated on or before August 1.... ” N.J.S.A. 54:29A-44(a) provides that, on or before March 1 of each year, every railroad “shall return to the [Director]” a schedule showing the “character and value” of the railroad’s property as of the preceding January 1. The word “shall” in this latter statute is as mandatory as the word “shall” in the farmland assessment statute. See Pennsylvania Tunnel & Terminal Ry. Co. v. Hendrickson, 87 N.J.L. 239, 241, 93 A. 589 (E. & A.1915), aff’d, 243 U.S. 633, 37 S.Ct. 481, 61 L.Ed. 940 (1917) (stating that, under the Railroad Tax Act of 1888, a predecessor to the Railroad Tax Law, the railroad company had a “duty” to include all of its railroad property on its information return, and that it “could not be excused from that duty” by an informal declaration to the then State Board of Assessors as the existence of a certain parcel of property).
N.J.S.A. 54:29A-18.1 does not permit a railroad company to “correct” the Director’s detailed statement of railroad property *302 by adding properties. The statute refers only to correcting errors in the Director's “classifications and valuations.” The Director makes these classifications and valuations in reliance on the March 1 information returns. Thus, only classifications and' valuations relating to property included in an information return may be “corrected.” Consequently, Conrail may not, in the guise of correction, add the subject building to its March 1, 1996 information return.
The provisions of N.J.S.A. 54:29A-25(b), which authorize the Director to impose omitted assessments on railroad property, do not suggest a different result. Under N.J.S.A. 54:4-23.13, an assessor may impose an added assessment on property which, because of a change in use between August 1 and December 31, ceases to qualify for farmland assessment. This does not permit a taxpayer, after August 1, to add a parcel of land to a farmland assessment application. Similarly, assessors’ rights to impose added assessments, under N.J.S.A. 54:4-63.1 to -63.11, and omitted assessments, under N.J.S.A. 54:4-63.12 to -63.40, do not extend the April 1 deadline for taxpayers (and municipalities) to file appeals under N.J.S.A. 54:3-21, including taxpayer appeals seeking exemption from taxation. N.J.S.A. 54:29A-25(b) should be interpreted in a manner consistent with these other statutes. Therefore, the Director’s right to impose added assessments on railroad property does not imply, or confer on a taxpayer, a right to supplement the taxpayer’s information return after March 1.
In order to obtain the benefit of the exemption from local property taxation provided by the Railroad Tax Law, Conrail was required to comply strictly with the requirements of the Law. It failed to do so. As a result, the Town of Kearny was entitled to assess the subject building for the tax year • 1997 as of the applicable valuation date for that year, October 1, 1996. N.J.S.A. 54:4-23. The provisions of N.J.S.A. 54:29A-11, under which an assessment under the Railroad Tax Law is “in lieu of all other State or local taxation,” are inapplicable to the 1997 assessment of the building.
*303 I conclude that there is no genuine issue as to any material fact before me, and that the Director and Kearny are entitled to judgment as a matter of law. R 4:46—2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995). Accordingly, Conrail’s motion for summary judgment is denied, and the motions for summary judgment of the Director and Kearny, respectively, are granted.
I need not address the other contentions asserted by the Director and by Kearny, including their contentions that the subject partially-completed building was not used for railroad purposes as of January 1, 1996 and that such use was not anticipated as of that date;

 The provisions of the Railroad Tax Law refer to the ‘commissioner” or “State Tax Commissioner,” defined as “the Director of the Division of Taxation in the State Department of the Treasury.” N.J.S.A 54:29A-2.